# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TONIA QUINLAN,                                          Case No. 1:14-cv-427
      Plaintiff,                                  Barrett, J.
                                                        Litkovitz, M.J.

      vs.


COMMISSIONER OF                                         **REPORT AND**
SOCIAL SECURITY,                                        **RECOMMENDATION**
      Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply (Doc. 20).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in December 2010, alleging disability since January 4, 2008[1] due to carpal tunnel syndrome, depression, bipolar disorder, degenerative disk disease, and stage three kidney disease. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Ena Weathers. Plaintiff and a vocational expert (VE) appeared

---

[1] Plaintiff previously filed a claim for disability benefits in September 2008, alleging disability since January 4, 2008. ALJ Gregory G. Kenyon issued a decision on November 2, 2010, finding plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 65-81). Plaintiff's appeal of this decision was denied by the Appeals Council and plaintiff did not appeal to District Court. Thus, the earliest plaintiff can be found disabled is November 3, 2010, the day after the prior administrative decision. (Tr. 17).

and testified at the ALJ hearing.  On January 17, 2013, the ALJ issued a decision denying

plaintiff's DIB and SSI applications.  Plaintiff's request for review by the Appeals Council was

denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or
mental impairment – *i.e.*, an impairment that significantly limits his or her
physical or mental ability to do basic work activities – the claimant is not
disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the
listings in Appendix 1 to Subpart P of the regulations and meets the duration
requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her
past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not
disabled.  If the claimant cannot make an adjustment to other work, the claimant is
disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)
(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the
sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.
2004).  Once the claimant establishes a prima facie case by showing an inability to perform the
relevant previous employment, the burden shifts to the Commissioner to show that the claimant
can perform other substantial gainful employment and that such employment exists in the
national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.
1999).

    **B.  The Administrative Law Judge's Findings**

    In rendering her decision on plaintiff's DIB and SSI applications, ALJ Weathers
recognized she was bound under principles of administrative res judicata by ALJ Kenyon's prior
findings, absent new and material evidence or changed circumstances pertaining to plaintiff's
residual functional capacity (RFC).  (Tr. 18, citing Acquiescence Ruling (AR) 98-4(6);
*Drummond v. Commissioner of Social Sec.*, 126 F.3d 837 (6th Cir. 1997)).  *See also* 42 U.S.C. §
405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall
be binding upon all individuals who were parties to such hearing.").  ALJ Kenyon found in his
written decision denying plaintiff's prior applications that from January 4, 2008, through the date
of his November 2, 2010 decision, plaintiff retained the RFC to perform the following work
activity: "sedentary work . . . except for the following: she can only occasionally crouch, crawl,
stoop, or climb ramps and stairs; only frequently use her upper extremities for handling and
fingering; and never climb ladders, ropes, and scaffolds, or work around hazards such as
unprotected heights or dangerous moving machinery.  She cannot work at jobs requiring the

driving of automotive equipment.  She is limited to performing unskilled simple, repetitive tasks

with only occasional contact with co-workers, supervisors, and the public.   She is also limited to

jobs with no occupational exposure to drugs or alcohol."   (Tr. 74).

On plaintiff's subsequent applications, ALJ Weathers applied the sequential evaluation

process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.

> 2. The [plaintiff] has not engaged in substantial gainful activity since January 4, 2008, the alleged onset date (20 CFR 404.1571-1576 and 416.971-976).

> 3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine; obesity; carpal tunnel syndrome with associated residuals status post bilateral release surgeries; depression; bipolar disorder; and a history of narcotic pain medication abuse (20 CFR 404.1520(c) and 416.920(c)).

> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following limitations.  She can only occasionally crouch, crawl, stoop, or climb ramps and stairs.  She is limited to frequent use of her upper extremities for handling and fingering.  She can never climb ladders, ropes, and scaffolds.  She can never work around hazards such as unprotected heights or dangerous machinery.  She cannot work at jobs requiring the driving of automotive equipment.  She is limited to performing unskilled, simple, repetitive tasks with only occasional contact with co-workers, supervisors, and the public.  She is also limited to jobs with no occupational exposure to drugs or alcohol.

> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

---

[2] Plaintiff's past relevant work was as a proofreader, which was performed at the sedentary level of exertion; deli clerk, which was performed at the light level of exertion; and nurse's aide and sandblaster, which were performed at the medium level of exertion.  (Tr. 30, 59).

7. The [plaintiff] was born [in] . . . 1967 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).[3]

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 4, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-31).

**C.  Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as assembler (750 jobs locally and 100,000 jobs nationally), packer (500 jobs locally and 80,000 jobs nationally), and inspector (400 jobs locally and 60,000 jobs nationally).  (Tr. 31, 61).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred at step five of the sequential evaluation process by relying on the VE's testimony to find plaintiff could perform jobs which are precluded by the physical RFC formulated by the ALJ, and by failing to account for plaintiff's moderate limitations in concentration, persistence, and pace; and (2) the ALJ failed to properly weigh the treating source opinions. (Docs. 10, 20).

6

## 1. Alleged errors at step five of the sequential evaluation process

Plaintiff argues that the ALJ erroneously relied on the VE's testimony to find she is able to perform a significant number of jobs.  Plaintiff contends that the VE's testimony was not consistent with information in the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations Defined in the Revised DOT.[4]  Plaintiff further alleges that the hypothetical posed to the VE failed to account for all of her mental limitations.

In response, the Commissioner argues that the VE's testimony did not conflict with the DOT.  The Commissioner argues that the DOT lists the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  (Doc. 15 at 4-5, citing SSR 00-4p, 2000 WL 1898704, Dec. 4, 2000) (emphasis added by defendant).  The Commissioner contends that a VE may be able to provide more specific information about jobs than the DOT, and an ALJ is generally entitled to rely on a VE's testimony regarding the functional requirements of jobs in the national economy.  *Id*. at 5 (citing SSR 00-4p and cases).

The role of the VE is to advise the ALJ of jobs in various employment categories that the plaintiff is able to perform given her limitations.  *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009).  The ALJ may choose to rely on the VE's testimony "given the VE's ability to tailor her finding to an 'individual's particular residual functional capacity.'"  *Id.* (citing *Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir. 2003); SSR 00-4p).  In order for a VE's testimony in response to a hypothetical question to constitute substantial evidence in support of the ALJ's finding as to the work the claimant can perform, the question must accurately portray a

---

[4] The SCO is published by the U.S. Department of Labor.  It contains "far more detailed occupational information" than is found in the DOT, including more detailed information concerning the physical demands and environmental conditions of the occupations analyzed.  (SCO Foreword, p. v).

claimant's impairments.  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

*See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v.*

*Comm'r of Social Sec.,* 276 F.3d at 239, 241 (6th Cir. 2002)).

While an ALJ can take judicial notice of and rely upon vocational resources such as the

DOT and the SCO, and may also use VE testimony for such purposes, VE testimony "generally

should be consistent with the occupational information supplied by the DOT [and SCO]."  *Oliver*

*v. Colvin*, No. 6:14-104-DCR, 2014 WL 6065849, at *7 (E.D. Ky. Nov. 12, 2014) (citing SSR

00-4p; 20 C.F.R. §§ 404.1560(b)(2), 404.1566(d), and 404.1566(e)).  If there is a conflict,

the ALJ must elicit a reasonable explanation for it.  *Id*. (citing SSR 00-4p, 2000 WL 1898704,

at *2) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT,

the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . .

evidence to support a determination or decision about whether the claimant is disabled.").[5]

Neither the DOT nor the VE testimony "automatically 'trumps' when there is a conflict."  *Id*.

The ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is

reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT

information."  *Id*. (emphasis added).   The Ruling explains the ALJ's obligation as follows:

> When vocational evidence provided by a VE . . . is not consistent with
> information in the DOT, the adjudicator must resolve this conflict before relying
> on the VE . . . evidence to support a determination or decision that the individual
> is or is not disabled.  The adjudicator will explain in the determination or decision

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner.  20 C.F.R. § 402.35(b)(1)."  *Ferguson v. Comm'r of Soc Sec.,* 628 F.3d 269, 272 n.l (6th Cir. 2010).  The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are.  *Id.* (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 549 (6th Cir. 2001)).

how he or she resolved the conflict.  The adjudicator must explain the resolution
of the conflict irrespective of how the conflict was identified.

*Id*., at *3.

At the ALJ hearing, the ALJ posed a hypothetical which asked the VE to identify jobs
available to an employee who is able to perform work at the sedentary level with these additional
restrictions: the individual can occasionally crouch, crawl, stoop, and climb ramps/stairs;
frequently use upper extremities for handling and fingering; never climb ladders/ropes/scaffolds,
work around hazards such as unprotected heights or dangerous moving machinery, or perform
jobs which require driving automotive equipment; is limited to performing unskilled, simple
repetitive tasks with only occasional contact with co-workers, supervisors and the public; and is
limited to jobs with no occupational exposure to drugs or alcohol.  (Tr. 60-61).  In response, the
VE testified that the hypothetical individual would be able to perform the requirements of
representative occupations such as assembler, representative DOT #734.687-034 (approximately
750 jobs in the local economy and 100,000 jobs in the national economy); packer, representative
DOT #731.685-014 (approximately 500 jobs in the local economy and 80,000 jobs in the
national economy); and inspector, representative DOT #726.684-050 (approximately 400 jobs in
the local economy and 60,000 jobs in the national economy).  (Tr. 61).

The VE testified at the ALJ hearing, and the ALJ determined in her written decision, that
the VE's testimony was consistent with the information in the DOT.  (Tr. 31, 61).  Counsel for
plaintiff did not point out any inconsistencies between the VE's testimony and information in the
DOT or SCO during the administrative hearing.  (*See* Tr. 62-63).  However, in the Statement of
Errors, plaintiff alleges there are inconsistencies as to the exertional requirements of the jobs
identified by the VE.  (Doc. 10 at 5).  First, plaintiff notes that according to the SCO, the jobs of

assembler, representative DOT #734.687-034, and inspector, representative DOT #726.684-050, require *constant* handling and fingering.  (*See* SCO, pp. 203, 283).  However, the VE testified that the hypothetical individual would be able to perform these jobs given an RFC restricting her to *frequent* handling and fingering.  (Tr. 60-61).  The ALJ relied on the VE's testimony to find plaintiff could perform the jobs of assembler and inspector without resolving this apparent conflict.  Because the ALJ provided no explanation for the apparent discrepancy, the record does not support the ALJ's finding that plaintiff is capable of performing the jobs of assembler and inspector despite her fingering and handling restrictions.  *See* SSR 00-4p, 2000 WL 1898704, at *2.

Nonetheless, the ALJ's error in this respect was harmless because substantial evidence supports the ALJ's finding that plaintiff is capable of performing the third job identified by the VE, which is the packer job.  Plaintiff alleges that the ALJ could not reasonably rely on the VE's testimony that a hypothetical individual with a restricted RFC for sedentary work would be able to perform the job of packer because the DOT identifies the job as light.  (Doc. 10 at 4-5).  A review of the record clearly shows, however, that the inconsistency identified by plaintiff is not between the VE's testimony and the DOT; rather, it is between the ALJ's written decision and the DOT and it is simply a typographical error.  (*See* Tr. 31).  The VE identified the job of packer that the hypothetical individual with an RFC for a range of sedentary work would be able to perform as representative DOT #731.685-014 (Tr. 61), which the DOT characterizes as a sedentary job.  (*See* www.occupationalinfo.org/731731685014.html).  In her decision, the ALJ accepted the VE's testimony that plaintiff would be able to perform the requirements of representative *sedentary* occupations such as packer and the VE's testimony as to the number of

10

such jobs existing in the local and national economies.  (Tr. 31) (emphasis added).  However, the

ALJ erroneously identified the job of packer in a footnote in her written decision as DOT

#731.684-014 (not #731.*685*-014 as the VE testified).  (*Id*., n. 15).  The DOT identifies the job

listed in the footnote as "doll repairer (any industry)" and categorizes the job as light.  (*See*

www.occupationalinfo.org/73/731684014.html).  Neither the VE nor the ALJ mentioned the job

of doll repairer, and it is clear when the ALJ's decision is read as a whole that the ALJ intended

to adopt the VE's testimony concerning the jobs a hypothetical individual with plaintiff's RFC

could perform.  Thus, the ALJ's obvious typographical error is not controlling.  *See Calkins v.*

*Sec'y Health & Human Servs.,* 793 F.2d 1290 (table), 1986 WL 17083, at *1-2 (6th Cir. May 7,

1986) (the district court was "permitted to disregard a rather obvious typographical error" in the

ALJ's opinion and examine "the opinion as a whole to interpret the true meaning of the ALJ's

findings.").  *See also Oliver*, No. 6:14-104-DCR, 2014 WL 6065849, at *7 (record incorrectly

referred to job VE identified as DOT #609.687-014 rather than correct DOT #669.687-014;

however, error was "of no real significance" as it resulted from an inability to accurately hear the

VE's telephone testimony and the jobs which the VE described fell under the latter DOT

description).  In accordance with the information in the DOT, the job of "packer" identified by

the VE is compatible with the ALJ's RFC finding limiting plaintiff to sedentary work.

Further, the VE's testimony on the packer job is sufficient, standing alone, to support the

ALJ's finding that a significant number of jobs exist in the national economy that plaintiff can

perform.  *See Walters v. Comm'r of Social Sec*., 127 F.3d 525, 529 (6th Cir. 1997)

(Commissioner has burden at step five of sequential evaluation process to show there are a

significant number of jobs the claimant can perform).  Under the regulations, "work exists in the

national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. §§ 404.1566(a), 416.966(a).   The VE testified there are approximately 500 packer jobs locally and approximately 80,000 such jobs in the national economy that the hypothetical individual would be able to perform.  (Tr. 61). Even if the number of local jobs identified does not constitute a significant number, the number of jobs in the national economy is a significant number of jobs.  *See, e.g., Nash v. Sec'y of H.H.S.,* 59 F.3d 171 (table), 1995 WL 363381, at *3 (6th Cir. June 15, 1995) (finding that 70,000 jobs was a significant number of jobs in the national economy); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578-79 (6th Cir. 2009) (2,000 jobs in the national economy is a significant number); *Putman v. Astrue,* No. 4:07-cv-63, 2009 WL 838155, at *3 (E.D. Tenn. Mar. 30, 2009) (200-250 regional jobs and 75,000 national jobs constitute significant numbers) (citing cases). Thus, the ALJ's obvious typographical error which referenced the packer job as DOT #731.684-014, rather than DOT #731.685-014 in accordance with the VE's testimony, is "of no real significance."  *See Oliver*, No. CIV.A. 6:14-104-DCR, 2014 WL 6065849, at *7.  The VE's testimony on the packer job substantially supports the ALJ's finding that plaintiff is able to perform a significant number of jobs given her RFC.

Plaintiff further alleges that the VE's testimony does not constitute substantial evidence in support of the ALJ's decision because the mental RFC on which the hypothetical was based, which limited plaintiff to "performing unskilled, simple, repetitive tasks with only occasional contact with co-workers, supervisors, and the public" (Tr. 24), failed to account for plaintiff's moderate limitations in concentration, persistence, or pace.  (Doc. 10 at 6-7).  Plaintiff acknowledges that the ALJ relied on the mental limitations assessed by the state agency

12

reviewing psychologists, which were adopted from the prior ALJ decision.  (*Id*. at 6, citing Tr. 23).  However, plaintiff alleges that the prior decision, which gave weight to the 2008 consultative examination of Mr. Dale Seifert, accounted only for limitations due to decreased stress tolerance.  (*Id*. at 7, citing Tr. 78- ALJ Kenyon found that, "Based on his observations, Mr. Seifert essentially concluded that the claimant was capable of completing simple, repetitive tasks with additional limitations due to moderately impaired stress tolerance.").  Plaintiff alleges that neither that decision nor the current ALJ decision imposed restrictions to account for plaintiff's moderate limitations in concentration, persistence, or pace.  (*Id*. at 7).  Plaintiff therefore alleges that the mental RFC finding on which the VE's hypothetical was premised is flawed.

In arguing that the ALJ's RFC finding failed to account for her moderate limitations in concentration, persistence, or pace, plaintiff challenges both the prior mental RFC finding made by ALJ Kenyon and ALJ Weathers' decision adopting the prior mental RFC finding.  Plaintiff argues that "neither decision provides limitations for concentration, persistence or pace."  (*Id*.).  Plaintiff's argument implicates principles of administrative res judicata, which apply to administrative decisions concerning a claimant's eligibility for social security benefits.  *Drummond*, 126 F.3d at 841; Acquiescence Ruling 98-4(6).  Social Security plaintiffs and the Commissioner alike are barred from relitigating issues that have previously been determined.  *Drummond,* 126 F.3d at 841-42.  Absent evidence that a plaintiff's condition has changed, findings issued by an ALJ in a prior disability determination are binding on an ALJ in a subsequent proceeding.  *Id*. at 842-43.  The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the

13

> prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998). When a claimant seeks to avoid application of a prior ALJ's finding, it is the claimant's burden to produce evidence showing that her condition has worsened since the time of the prior determination. *Goddard v. Comm'r of Soc. Sec.*, No. 2:11-cv-809, 2012 WL 3269337, at *7 (S.D. Ohio Aug. 10, 2012) (Report and Recommendation) (Deavers, M.J.), *adopted,* No. 2:11-cv-809, 2012 WL 4180703 (S.D. Ohio Sept. 18, 2012) (Watson, J.) (citing *Caudill v. Comm'r of Soc. Sec.,* 424 F. App'x 510, 515 (6th Cir. 2011).

Here, plaintiff has not carried her burden to show that her mental condition has worsened since the date of ALJ Kenyon's November 2010 decision. ALJ Kenyon relied on the findings of consultative examiner Mr. Seifert in finding that plaintiff retained the RFC to perform a restricted range of sedentary work with the following mental limitations: "She is limited to performing unskilled simple, repetitive tasks with only occasional contact with co-workers, supervisors, and the public. She is also limited to jobs with no occupational exposure to drugs or alcohol." (Tr. 74). In rendering her decision on plaintiff's subsequent DIB and SSI applications, ALJ Weathers effectively determined that plaintiff's mental RFC had not changed. (Tr. 24). ALJ Weathers relied on the assessments of state agency reviewing psychologists Drs. Mary Hill, Ph.D., and Robelyn Marlow, Ph.D. (Tr. 29, citing Tr. 88-99, 101-12, 114-26, 128-40). Both Dr. Hill and Dr. Marlow assessed plaintiff as having mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation of an

14

extended duration.  (Tr. 92, 105).  Both psychologists determined that updated medical evidence did not show any significant changes from ALJ Kenyon's decision, and they expressly adopted the prior mental RFC under *Drummond* and AR 98-4.  (Tr. 96, 109).  ALJ Weathers determined that treatment and counseling records showing plaintiff continued to report mild symptoms that were controlled by medication with some symptoms of forgetfulness and interpersonal issues supported the conclusions of Drs. Hill and Marlow.  (Tr. 29).  The ALJ was entitled to rely on the opinions of the state agency reviewing psychologists in determining that plaintiff's mental RFC had not changed.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation," and whose findings and opinions the ALJ "must consider . . . as opinion evidence.").

Plaintiff does not point to any "new and material evidence" relating to her mental condition or a change in the law, rulings or regulations that show ALJ Weathers erred by adopting the prior decision.  Instead, plaintiff challenges the prior RFC finding and the current RFC finding on precisely the same grounds.[6]  Absent new and material evidence or evidence of changed circumstances pertaining to plaintiff's mental RFC, ALJ Weathers was bound under principles of administrative res judicata by ALJ Kenyon's prior mental RFC finding.  *See* AR 98-4(6); *Drummond*, 126 F.3d at 841.  Because plaintiff has not pointed to any such evidence in the record, her claim that the ALJ erred by failing to account for her moderate mental limitations in the RFC and in the hypothetical to the VE is not well-taken.

---

[6] In presenting her challenge, plaintiff states that ALJ Kenyon gave "great weight" to consultative examiner Seifert's opinion.  (Doc. 10 at 7, citing Tr. 78).  The ALJ actually gave "weight" to Mr. Seifert's conclusions that plaintiff was essentially "capable of completing simple, repetitive tasks with additional limitations due to moderately impaired stress tolerance[.]"  (Tr. 78).

Plaintiff's first assignment of error should be overruled.

## 2. Weighing of the medical opinion evidence

Plaintiff alleges as her second assignment of error that the ALJ erred in evaluating the opinion of plaintiff's treating psychologist, Dr. Dipika Shah, M.D., and by failing to consider the opinions of certified nurse practitioner Tonia Conn, CNP, pursuant to SSR 06-3p.  (Doc. 10 at 7-11).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ

declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the length, nature and extent of the treatment relationship and the frequency of examination.  20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted).  *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).  Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p).  This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Here, the ALJ evaluated the September 2012 assessment of ability to do work-related activities prepared by plaintiff's treating psychiatrist, Dr. Shah.  (Tr. 731-35).  Dr. Shah indicated she had treated plaintiff beginning in 2009 until August 2012.  (Tr. 733).  Dr. Shah diagnosed

17

plaintiff with mood disorder NOS and chronic pain.  (*Id.*).  Dr. Shah opined that plaintiff had

marked limitations in her ability to interact with supervisors, deal with work stresses, and

function independently; moderate limitations in her ability to relate to co-workers, deal with the

public, behave in an emotionally stable manner, relate predictably in social situations, and

demonstrate reliability; and mild difficulties in using judgment and following detailed but not

complex job instructions.  (Tr. 731-32).  In identifying plaintiff's functional limitations, Dr. Shah

found plaintiff had no limitations in her activities of daily living, mild limitations in maintaining

social functioning, and moderate limitations in maintaining concentration, persistence or pace,

and she had experienced no episodes of decompensation of extended duration.  (Tr. 732).

The ALJ gave "good weight" to Dr. Shah's opinion as to the degree of plaintiff's

functional limitations.  (Tr. 23, citing Tr. 731-35).  The ALJ acknowledged that Dr. Shah

assessed plaintiff as less limited in these areas than did ALJ Kenyon and state agency reviewing

psychologists, Drs. Hill and Marlow.  (Tr. 23).  However, the ALJ adopted the greater limitations

imposed by ALJ Kenyon and the state agency psychologists as consistent with slightly greater

limitations on plaintiff's activities of daily living and social functioning, which were supported

by the record.  (*Id.*).  The ALJ gave "some weight" to certain portions of Dr. Shah's assessment

in determining whether there was any new evidence that warranted modifying plaintiff's RFC.

(Tr. 29).  The ALJ noted that according to Dr. Shah, plaintiff had limitations that ranged from no

limitations to moderate limitations in most areas of functioning, with the exception of marked

limitations in interacting with supervisors, dealing with work stress, and functioning

independently.  (*Id.*, citing Tr. 731-35).  The ALJ found the assessment of marked limitations in

these areas was inconsistent with the rest of Dr. Shah's assessment indicating plaintiff had no

limitations in independently handling her activities of daily living and only mild limitations in

social functioning.  (*Id.*).  In addition, the ALJ found Dr. Shah had provided no explanation in

either the assessment or in plaintiff's treatment notes to support a conclusion of marked

limitations; rather, plaintiff reported that she got along with everyone while working and also

reported generally mild mental health symptoms.  (*Id.*, citing Tr. 563).  The ALJ found the record

generally supported the rest of the limitations identified by Dr. Shah.  The ALJ therefore gave

"some weight" to "the portion of Dr. Shah's assessment finding moderate or less limitations . . .

in evaluating the residual functional capacity" and "minimal weight" to "the portion identifying

marked limitations. . ."  (Tr. 29).

The ALJ gave "good reasons" for the weight given Dr. Shah's opinions and thoroughly

explained her reasons for the weight afforded Dr. Shah's assessment.  Plaintiff has not shown

that the reasons provided by the ALJ lacked substantial support or that the ALJ otherwise erred in

evaluating Dr. Shah's opinion.  Plaintiff alleges that the ALJ "never discussed in the decision"

Dr. Shah's findings that plaintiff has marked limitations in interacting with supervisors, dealing

with work stress, and functioning independently.  (Doc. 10 at 8-9).  This is not accurate.  As set

forth above, the ALJ expressly discussed the marked limitations Dr. Shah assessed in these areas

and gave valid reasons for discounting this portion of Dr. Shah's opinion.  (Tr. 29, citing Tr. 731-

35).  Plaintiff further alleges that the ALJ "never discussed in the decision" Dr. Shah's finding

that plaintiff has moderate limitations in the ability to maintain attention/concentration.  (Doc. 10

at 8-9, citing Tr. 731).  This, too, is not accurate.  The ALJ expressly acknowledged Dr. Shah's

finding that plaintiff has moderate limitations with respect to concentration, persistence or pace

and the ALJ adopted this limitation, which is consistent with the limitation in this area assessed

by the state agency reviewing psychologists and ALJ Kenyon. (Tr. 23, 29). Plaintiff has shown no error in this regard.

In addition to crediting portions of Dr. Shah's opinion, the ALJ credited the opinions of the state agency reviewing psychologists in finding there was no new medical evidence showing a significant change in the mental RFC since the prior ALJ decision. (Tr. 29). The ALJ found that their conclusions were supported by the treatment and counseling records demonstrating that plaintiff continued to report mild symptoms which were controlled by medication with some symptoms of forgetfulness and interpersonal issues. (*Id.*). The ALJ thoroughly evaluated plaintiff's reports of such symptoms and the evidence substantially supports the ALJ's finding that other than "a few isolated stressors," plaintiff generally reported only mild to moderate depression and "a little anxiety," improvement of her symptoms with medication, and improving sleep. (Tr. 27, citing Tr. 523-25, 533-34, 739-43, 748-52, 775, 779, 788, 806). Plaintiff was reported to be depressed, tearful, and anxious at times (*see*, e.g., Tr. 552, 555, 559, 562, 577), but the record generally documents mild to moderate symptoms that improved with medication over time and negative mental exam findings without abnormalities of thought content.

Plaintiff points to no objective mental health evidence to show that the ALJ erred in evaluating Dr. Shah's opinion and in crediting the assessments of the state agency reviewing psychologists, both of whom adopted ALJ Kenyon's mental RFC. Plaintiff alleges that the ALJ created an apparent inconsistency between Dr. Shah's opinion and plaintiff's testimony and the record as a whole by misrepresenting the record and misstating plaintiff's testimony. (Doc. 10 at 9, 10). Plaintiff's allegations that the ALJ misstated the record pertaining to her mental impairments are not well-taken. Plaintiff faults the ALJ's finding that she was able to follow

20

along during the ALJ hearing and answer questions without difficulty, alleging that the 32-minute hearing lasted "substantially less than the one to two hour periods full time work is typically performed."  (*Id*. at 9, citing Tr. 39, 64).  Plaintiff cites no authority for the proposition that full-time work is typically performed for such time periods, and she has waived her argument that the ALJ improperly relied on her observations of plaintiff to support this specific finding by failing to develop it.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

Plaintiff further alleges that the ALJ misstated her testimony by finding she testified at the hearing that she "follows specific television programs, indicating she is capable of paying attention to and remembering the storyline, and that she is able to sit through a 30-minute episode without interruption."  (*Id.*; *see* Tr. 22).  Plaintiff alleges that in fact the transcript shows only that she can watch one 30-minute episode of her favorite television show before she has to get up and move around.  (Doc. 10 at 9, citing Tr. 50).  Plaintiff has not shown any error in this regard.  Although she did not explicitly testify that she "pays attention" to the program or "remembers the storyline," the ALJ reasonably inferred from plaintiff's testimony that she is able to watch a 30-minute television program at one sitting that plaintiff is able to follow the program for this period of time.  (Tr. 22, 50).  Finally, plaintiff's allegation that the ALJ misconstrued the evidence so as to make Dr. Shah's opinions and plaintiff's testimony appear inconsistent with the record as a whole is belied by the ALJ's written decision.  The ALJ relied on plaintiff's ability to follow along at the ALJ hearing and plaintiff's testimony indicating she could pay attention to a 30-

minute television program in support of her finding that plaintiff had "no more than moderate difficulties with regard to concentration, persistence or pace." (Tr. 22). The ALJ's finding in this regard is *consistent* with Dr. Shah's assessment. (Tr. 732). Thus, the ALJ did not err by misrepresenting the record as it pertained to plaintiff's mental health symptoms.[7]

Plaintiff alleges that the ALJ failed to comply with SSR 06-3p by "reject[ing] all of the findings" and not considering the "opinion[s]" of certified nurse practitioner Tonia Conn, MSN, CNP, who had a long history of treating plaintiff. (Doc. 10, citing Tr. 26, 657-98). Pursuant to SSR 06-03p, because the ALJ must consider all relevant evidence in an individual's case record, the ALJ's decision should reflect consideration of evidence from both "acceptable medical sources" and health care providers who are not "acceptable medical sources." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Only "acceptable medical sources" can provide evidence establishing the existence of a medically determinable impairment, give medical opinions, and be considered treating sources under 20 C.F.R. §§ 404.1502 and 416.902 whose medical opinions may be entitled to controlling weight. *Id.*, at *2. Certified nurse practitioners are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). Information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairment and how it affects the individual's ability to function. SSR 06-03p, 2006 WL 2329939, at *2. The ALJ "should explain the weight given to opinions from these 'other

---

[7] In further support of plaintiff's argument that the ALJ failed to properly weigh the treating source opinions, plaintiff argues that the ALJ misrepresented her testimony about her daily activities, selectively cited evidence to "create an appearance of inconsistency" concerning the treatment of her back impairment, and improperly relied on the records of plaintiff's kidney specialist, Dr. Saud Butt, M.D., which make no mention of back or leg complaints, to discount plaintiff's credibility and a physical therapy evaluation. (Doc. 10 at 9-10). None of these arguments pertain to the ALJ's evaluation of the assessment of Dr. Shah, plaintiff's treating psychiatrist, and plaintiff has not identified any other treating physician or "acceptable medical source" of record whose opinion the ALJ failed to properly weigh. The Court therefore declines to address these arguments.

sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Id.*, at *6.

Here, the ALJ found that the record included a note from Ms. Conn that was inconsistent with the examination findings of the physicians of record, which showed little more than tenderness on physical examination. (Tr. 26). Specifically, Ms. Conn indicated that plaintiff had a bilateral straight leg raise test that was positive at 80° to 90° in May 2012. (Tr. 659). The ALJ found that the results reported by Ms. Conn did not indicate any disc or nerve root involvement and were inconsistent with the findings of several physicians who conducted the same test. (Tr. 26). The ALJ sufficiently explained her reasons for rejecting Ms. Conn's finding. Plaintiff does not identify any other finding reported by Ms. Conn that the ALJ rejected. Nor does plaintiff point to any opinion by Ms. Conn that the ALJ failed to consider. Accordingly, the ALJ did not err by failing to comply with SSR 06-03p.

Plaintiff's second assignment should be overruled.

## III. Conclusion

Plaintiff has not shown that the ALJ erred in weighing the medical opinion evidence, by failing to account for plaintiff's moderate limitations in concentration, persistence or pace, or by relying on the VE testimony to find that plaintiff could perform a significant number of jobs given the physical and mental limitations which are supported by the evidence. The ALJ thoroughly evaluated the evidence of record and considered whether a departure from the decision on her prior applications was warranted based on new and material evidence or evidence of changed circumstances. Substantial evidence supports the ALJ's finding that the record does

not include such evidence so as to warrant modification of the prior decision.  *See Drummond*,

126 F.3d at 841; Acquiescence Ruling 98-4(6).

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the

docket of the Court.


Date:   5/28/2015                                    s/Karen L. Litkovitz
                                                                 Karen L. Litkovitz
                                                                 United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TONIA QUINLAN,                                      Case No. 1:14-cv-427
      Plaintiff,                               Barrett, J.
                                                    Litkovitz, M.J.

      vs.


COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).